3  ----------------------------------------------------------------

4  UNITED STATES OF AMERICA,              )
                                         )
5                   Plaintiff,           )    Case No. CR 11-135
                                         )    Milwaukee, Wisconsin
6        vs.                             )
                                         )    August 13, 2012
7  ARVIND AHUJA,                         )    10:30 a.m.
                                         )
8                   Defendant.           )    PAGES 218-281

9  ----------------------------------------------------------------

10            **TRANSCRIPT OF MOTION HEARING (VOLUME 3)**
          BEFORE THE HONORABLE CHARLES N. CLEVERT, JR.
11        UNITED STATES CHIEF DISTRICT JUDGE, AND A JURY

12 APPEARANCES:

13  For the Plaintiff
    UNITED STATES OF AMERICA:     Office of the US Attorney
14                                By: TRACY M. JOHNSON
                                  517 E Wisconsin Ave - Rm. 530
15                                Milwaukee, WI 53202
                                  Ph: 414-297-1580
16                                Fax: 414-297-4394
                                  tracy.johnson@usdoj.gov
17  )
                                  United States Department of
18                                Justice DC
                                  By: JOHN E. SULLIVAN
19                                    MELISSA S. SISKIND
                                  Tax Division - Ben Franklin
20                                Station - PO Box 972
                                  Washington, DC 20044
21                                Ph: 202-514-5196
                                  Fax: 202-616-1786
22                                john.e.sullivan@usdoj.gov
                                  melissa.s.siskind@usdoj.gov
23

    U.S. Official Reporter:       JOHN T. SCHINDHELM, RMR, CRR,
24                                johns54@sbcglobal.net

25  Proceedings recorded by computerized stenography,
    transcript produced by computer aided transcription.

```
 1  APPEARANCES CONT'D:

 2    For the Defendant            Friebert, Finerty & St. John SC
      ARVIND AHUJA:                By: SHANNON A. ALLEN
 3    (Present)                    Two Plaza East - Ste 1250 - 330 E
                                   Kilbourn Ave
 4                                 Milwaukee , WI 53202
                                   Ph: 414-271-0130
 5                                 Fax: 414-272-8191
                                   saa@ffsj.com
 6
                                   Winston & Strawn LLP
 7                                 By: DAN K. WEBB
                                       THOMAS L. KIRSCH II
 8                                 35 W Wacker Dr
                                   Chicago , IL 60601-9703
 9                                 Ph: 312-558-5600
                                   Fax: 312-558-5700
10                                 dwebb@winston.com
                                   tkirsch@winston.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    P R O C E E D I N G S (11:00 a.m.)

2    THE COURT:  Case No. 2011-CR-135, United States of

3    America vs. Arvind Ahuja.  This matter is before the court for

4    oral argument.  May we have the appearances, please?

11:00   5    MS. JOHNSON:  Yes, Your Honor.  On behalf of the

6    United States we have John Sullivan, Melissa Siskind, I am Tracy

7    Johnson, and Special Agent Geoffrey Cook.

8    THE COURT:  Good morning to each of you.

9    MR. WEBB:  Good morning, Your Honor.  On behalf of the

11:00   10   defense Dan Webb, the defendant Dr. Ahuja is present, Tom

11   Kirsch, and Shannon Allen.  We're all present.

12   THE COURT:  Good morning to you as well.

13   I apologize for getting started later than planned,

14   but I wanted to look at your briefs and consider the arguments

11:01   15   that you have offered up for consideration today.  Consequently,

16   I've been pouring over your submissions and trying to ascertain

17   whether or not all points of interest have been addressed.

18   It did come to my attention that in going over your

19   briefs that there are a couple of points that need to be

11:01   20   addressed, and one such point relates to the timing of the

21   documents at issue, 69 -- Exhibit 69 and 71.  Your submissions

22   do not talk about when these documents may have been prepared.

23   Therefore, I'd like to hear from you inasmuch as

24   timing does enter into the picture in determining whether or not

11:02   25   these documents are admissible under the residual hearsay rule.

220

1    Does the government wish to be heard?  Go ahead.

2          MS. SISKIND:  Thank you, Your Honor.  Your Honor, the

3    screen shots in Exhibit 69 and 71 are essentially a picture of a

4    moment in time of what the computer system looked like in India.

11:02  5    And if Your Honor looks at the screen shots, for example, the

6    first one that appears in Exhibit 69, Your Honor can see that

7    the bank record at issue here bears both a date and a time.

8    This one is the 9th of September 2006, at 2:09.  The fact that

9    is clearly a snapshot of what the computer looked like on a

11:03  10    particular date and time, coupled with the fact that there is

11    both a date and time on here, strongly suggests that this

12    particular bank record, for example, was created when taken from

13    the computer system on September 9th, 2006 at 2:09.  And the

14    other screen shot bank records at issue here similarly bear

11:03  15    dates and times that establish when they were created.

16          THE COURT:  Does the defense wish to counter?

17          MR. KIRSCH:  Yes, Your Honor.  Your Honor, the reason

18    we didn't address this is because absolutely nothing has changed

19    in this regard from what the court said on Friday.  And I have

11:04  20    the transcript from Friday's hearing, and the court on Friday,

21    at page 192 of the transcript, correctly concluded that the

22    government's evidence, including the screen shots and

23    Ms. Katju's testimony, the court correctly concluded that

24    Ms. Katju failed to show the time or times at which information

11:04  25    is input into the system.

221

1          Now, if Ms. Katju couldn't do it, clearly the

2     documents can't do it by themselves.  And I think that's the

3     point the court is making this morning.  Nothing has changed

4     since Friday in that regard.  The government didn't address this

5     in their brief because there's absolutely no evidence, they have

6     none, as to the time or times at which the information is

7     inputted in the system.

8          The court continued:  "It's notable that today

9     Ms. Katju mentioned that some information is input at the time

10    instructions are given by a bank customer.  That testimony alone

11    does not establish that she has the requisite knowledge that

12    would allow the admission of the screen shots as business

13    records."

14         The court was absolutely 100 percent correct in that

15    holding.  Nothing has changed between now and Friday.  So, these

16    screen shots, coupled with Ms. Katju's testimony, do not

17    establish when these documents may have been prepared.

18         THE COURT:  Does the government wish to respond?

19         MS. SISKIND:  Only, Your Honor, that the documents do

20    bear dates and times.  And Ms. Katju testified that, on an

21    as-needed basis, what information was needed from India, a

22    request would be made to the bank in India and someone in that

23    country would send a picture of what the HUB system looked like

24    to the representative office in New York.

25         And it is these screen shots bearing dates and times

222

1    in Exhibits 69 and 71 that HSBC located among its records at the

2    bank here in the United States and produced to the government.

3         We would suggest, Your Honor, that establishes they

4    were produced -- that they were prepared just as Ms. Katju

5    testified.  Even though she did not have specific knowledge of

6    these screen shots, her testimony is very informative about how

7    screen shots generally were used by employees at the

8    representative office.

9         THE COURT:  There are a couple of things that I have

10   considered this morning.  One is, the testimony of Vandana

11   Katju.  Ms. Katju testified respecting her work as an HSBC

12   employee in India; as an HSBC employee in New York; and as an

13   HSBC employee in California.

14        Among other things, she testified -- trying to find

15   what she said -- that she relied upon the HUB system to obtain

16   information respecting the accounts of HSBC clients.  She added

17   that "If a client wanted something documented, we had to reach

18   out to HSBC-India; and if a client wasn't necessarily interested

19   in it being documented but the inquiry was complicated, then

20   they would refer to HSBC-India."

21        She added that "We wanted to see the screens

22   themselves directly to make sure that we were capturing the

23   information that they wanted correctly."

24        In response to the government's inquiry as to whether

25   or not HSBC-NRI Services wanted the information to be accurate,

1    she said:  "We'd get these screens because we -- some of these

2    clients had multiple CDs and complicated accounts with us and

3    they wanted to make sure that we were looking at the screen and

4    giving them accurate information."

5    She also was asked:  "Now, the HUB system, was that

6    something you personally used when you worked for the bank in

7    India?"

8    She said:  "I did."

9    "When you were working in India did you rely on the

10   entries in that system in conducting your work at HSBC?"

11   She said:  "Yes."

12   She was also asked:  "Did you ever have any reason to

13   doubt the reliability of that system?"

14   Answer:  "No."

15   Question:  "And when you were working in the United

16   States and you were using screen shots that came from that

17   system, did you ever have any reason to doubt the reliability of

18   those screen shots?"

19   Her answer:  "No."

20   Scott Maciejewski, the record custodian who testified,

21   indicated that he prepared a 902(11) records certification for

22   this case, and that the information he retrieved and provided

23   came from computer servers that hold HSBC e-mails.

24   He went on to say that "HSBC has a shared directory

25   which is basically a server where people can save records in a

224

1    shared directory for access within their department or with

2    their own computers as well as side files or hardcopies that are

3    kept on location or at archives."

4         He further testified that no later than January 1st of

5    2006, 100 percent of the e-mails that come through servers --

6    through the server -- is going -- no, ingoing and outgoing are

7    retained.

8         He furthered testified that screen shots are

9    maintained in some form in HSBC offices in the United States,

10   and added that they are retained either as attachments in

11   e-mails and possibly saved on the shared drive after that, as

12   well as printed out hardcopies.

13        He indicated also that HSBC has a policy entitled,

14   "HSBC-North America E-Mail Policy."  That policy applies to HSBC

15   employees in the United States as well as in India.

16        He went on to verify the process utilized in

17   retrieving the records that were part of his certification --

18   that were covered by his certification, and noted that the IT

19   department of HSBC did a search which was restricted to the H+

20   server of HSBC which found e-mails that were the subject of his

21   certification.

22        He also testified that if it was provided with the

23   records, it was maintained on the HSBC Bank-USA server.

24        Now, the court's prior ruling that the documents --

25   various documents were not admissible under the business records

225

1    rule does not preclude a finding that the documents may be

2    admissible under the residual hearsay rule.

3          Additionally, the court notes that its earlier ruling

4    took into account Rule 803(6), and in particular sub (a), where

5    "a record of an act, event, condition, opinion, or diagnosis has

6    to be shown to be a record which was made at or near the time by

7    or from information transmitted by someone with knowledge."

8          Ms. Katju's testimony, which I referred to previously

9    in barring admission of the records under 803, did not address

10   whether or not the information was -- whether the record was of

11   information that was made at or near the time by someone with

12   knowledge.  Now, however, the government has pointed out the

13   dates that are shown in the screen shots in Exhibits 69 and 70.

14   Moreover, as we have discussed, the screen shots were utilized

15   regularly by people in the NRI office as testified to by

16   Ms. Katju.  The bank captured those screen shots, it saved those

17   screen shots, and bank employees utilized those screen shots to

18   provide what was deemed to be the actual information reflected

19   in the records of HSBC at particular times and on particular

20   dates.  The requirements of 807 have, therefore, been met.

21          The court notes that there are circumstantial

22   guarantees of trustworthiness by virtue of the manner in which

23   these materials are transmitted, utilized and relied upon during

24   the regular business of HSBC here in the United States.  These

25   documents do relate to something that is quite material in these

226

1    proceedings.  The government has pointed out that it does not

2    have the ability to provide witnesses who could testify to the

3    particulars of how the information is physically captured and

4    input into the HUB system in India because those persons are

5    beyond the subpoena power of the government and clearly outside

6    the United States.

7              And lastly, the interest of justice would be served by

8    virtue of allowing this information -- I should say Exhibits 69

9    and 71 -- to be utilized in this case.

10             Now, the court further notes that we are pretrial and

11   the government, by virtue of its request last week for admission

12   of these documents under Rule 807, has given pretrial notice to

13   the defense.  The defense has had a chance to be heard with

14   respect to the utilization of these exhibits.  And it is also

15   apparent from the matters on file in this case and the

16   arguments, that the defense was aware of the government's desire

17   to utilize these materials during the course of the trial and

18   there is nothing that the government is proffering with respect

19   to these exhibits at this time that would unfairly prejudice the

20   defense with respect to these matters.

21             Hence, the government may utilize Exhibits 69 and 71

22   over the objection of the defense which will not be required to

23   reiterate its objection during the course of the trial.  Its

24   objection is preserved to the extent that it has been made and

25   reflected in the submissions and arguments of counsel.

227

1          Is there anything further with respect to these two

2    exhibits?

3          MS. SISKIND:  No, Your Honor.

4          MR. KIRSCH:  Your Honor, I'd just like to make one

5    point of clarification --

6          THE COURT:  Yes.

7          MR. KIRSCH:  -- from the defense argument.

8    Your Honor, the court is relying on the date and time on the

9    screen shot.  But as we discussed last week, I think the date

10   and the time on the screen shot is just -- could be the date and

11   the time the screen shot was printed.  It says nothing about the

12   date and the time the information was input into the system.

13         THE COURT:  That's correct.

14         MR. KIRSCH:  Okay.  I just wanted to make that

15   clarification.  Your Honor, we --

16         THE COURT:  It is what it is.

17         MR. KIRSCH:  Okay.  We have --

18         THE COURT:  And I think that goes to weight and not

19   admissibility.

20         MR. KIRSCH:  Okay.  I just wanted to make the record

21   clear on that point, Your Honor.

22         There are -- now, Your Honor, because of the court's

23   Santiago ruling there are a multitude of exhibits that are

24   e-mails that I think the court has to consider under 803(6).

25   The government has never put on any evidence whatsoever that it

228

1      was the policy of HSBC to require the creation of e-mails of

2      this sort.  We now get back to the telephone conversation versus

3      e-mail argument that we had at the beginning that the court had

4      reserved.  But this now is very germane to these exhibits

5      because none of these exhibits will come in under the hearsay

6      exception.  So the only thing the government is left with is

7      803(6).

8              They've put on no evidence -- and I can give the court

9      the exhibit numbers, but there are multitudes of e-mails in this

10     case that do not come in under 803(6) because the government

11     cannot establish -- all they can establish is that HSBC had an

12     e-mail policy that said generally use e-mails for business, but

13     says nothing about what was required to be recorded in an e-mail

14     which is the indicia of reliability.  The whole point of 803(6)

15     is that if something is required to be reported or recorded,

16     that it has an indicia of reliability.  But if you're just

17     sending e-mails between friends it does not have that indicia of

18     reliability just because it's written down.

19             And so we have to address -- I think we have to

20     address all of these e-mails because this could have significant

21     bearing on the government's proof at trial.

22             THE COURT:  Does the government wish to reply?

23             MS. SISKIND:  Yes, Your Honor.  Absolutely.

24             Your Honor, based on the court's prior rulings on the

25     Santiago issue, the government no longer intends to introduce at

229

1     trial e-mails authored by bankers.  The government may still

2     seek to introduce e-mails authored by the defendant as part of

3     an e-mail chain with bankers, but the government is no longer

4     seeking to admit those e-mails that are solely between bankers.

5                    Your Honor --

6                    THE COURT:  What I would like to suggest is that the

7     defense and the government confer so that we can clearly

8     identify for the record those documents that the government is

9     not seeking to admit.  And if there are any additional documents

10    as to which the defense has an ongoing objection, those can be

11    clearly identified for the record.  All right?

12                   MS. SISKIND:  Yes, Your Honor.

13                   THE COURT:  Will it take you very long to do that?

14                   MS. SISKIND:  No, Your Honor.  I believe over the

15    weekend we identified those exhibits that we still intend to

16    admit.  We can retrieve those briefly and have a conversation.

17                   THE COURT:  All right.  Please have your conversation

18    off the record and then we'll go back on the record and make

19    sure that we note precisely what documents are being offered

20    and as to those that are being offered those -- the subset of

21    documents as to which there is an ongoing objection.

22                   But before we break, I'm curious about the testimony

23    you wanted to preserve and where we stand with regard to the

24    video deposition.  I understand that there were some technical

25    issues that needed to be ironed out.

1     MR. SULLIVAN:  Your Honor, we discussed this on

2 yesterday, Sunday.  We discussed this yesterday on Sunday and

3 the defense did not agree to the use of a deposition.  They have

4 filed their response.  If we go to trial on Wednesday we

5 anticipate our direct examination of that witness is going to be

6 45 minutes or less.  So if we do start on Wednesday then the

7 witness could testify on Wednesday and we wouldn't have an

8 appellate issue hanging over our heads.  And so we will agree

9 that we will forego the deposition and just do it in front of

10 the jury the way it was intended to be.  If that makes sense.

11     THE COURT:  Makes perfect sense.  As long as that is

12 something that you believe is an appropriate way to proceed I

13 don't have a problem with you offering, as you said previously,

14 live testimony, unquote.

15     MR. SULLIVAN:  As opposed to bringing in a dead

16 person?

17     THE COURT:  Precisely.  All right, we'll take a short

18 break.

19          (Recess taken at 11:27 a.m., until 11:46 a.m.)

20     THE COURT:  Counsel?

21     MR. KIRSCH:  Your Honor, we've resolved I think our

22 differences except for with respect to three exhibits.  We have

23 objections that remain to three exhibits.

24     THE COURT:  All right.  What are they?

25     MR. KIRSCH:  They're 17, 35, and 38.

231

1    THE COURT:  I they that 17 is DOJ - Kolb, 006506.  At

2    the top it is headed by the name Andrea D., is that Heise,

3    H-E-I-S-E?

4    MR. KIRSCH:  Your Honor, I think it's Heise, but --

11:48    5    THE COURT:  Heise.  All right.  What's the objection?

6    MR. KIRSCH:  Well, Your Honor, it's clearly hearsay.

7    The defendant was not cc'd on the e-mail.  The e-mail was not to

8    him, it was not from him.  There'll be no testify -- there'll be

9    no testimony that he's ever seen the e-mail, that he ever knew

11:48    10    of the e-mail.  And I think the government is going to call Mark

11    Miller and perhaps Andrea Heise, and the admission of this

12    e-mail is clearly hearsay without a hearsay exception and it

13    would -- to offer this during Mark Miller's testimony would just

14    be bolstering.  They can't -- there's no exception to this --

11:48    15    there's no hearsay exception that would apply to an e-mail like

16    this on which the defendant never even saw it.

17    THE COURT:  I'd like to hear what the government plans

18    to do with Exhibit Number 17 and why, if at all, it believes the

19    exhibit is admissible.

11:49    20    MS. SISKIND:  Your Honor, Mark Miller will testify

21    that this e-mail was created and maintained in the ordinary

22    course of his accounting firm's business.

23    This is -- this e-mail is tantamount to the accountant

24    notes that the Eighth Circuit found were admissible in the

11:49    25    Hoselton case which we cited in our papers.  Mark Miller will

232

1  testify that this e-mail was printed out and kept within his

2  work papers along with the other work papers that went into the

3  tax returns he filed and prepared for the defendant.  That takes

4  care of the hearsay exception for the e-mail itself.

11:49  5          The government will be using this e-mail in part for

6  one particular statement of the defendant recounted within this

7  e-mail.  And so the outer hearsay exception would be the

8  business record exception.  And as far as the inner hearsay for

9  the defendant's statement, that would be non-hearsay under

11:50  10  801(d)(2)(A).

11          And, Your Honor, I'm referring to the paragraph that

12  begins "Arvind will follow up on a couple bank or brokerage

13  accounts."

14          THE COURT:  The admissibility of this is going to

11:50  15  depend primarily upon the testimony of this witness, correct?

16          MS. SISKIND:  Yes, Your Honor.  He will lay the

17  foundation.

18          THE COURT:  I'd like to hear more from the defense as

19  to why the statement -- I should say the statement that you just

11:51  20  referred to, which begins with "Arvind will follow up," should

21  not be admitted.

22          MR. KIRSCH:  Well, Your Honor, "Arvind will follow up"

23  is not a statement of the defendant.  It's just not.  So it

24  can't be admitted as non-hearsay as a statement of the

11:51  25  defendant.

233

1     And to admit the rest of the e-mail I think is just

2  improper bolstering of the witness.  We can see what the witness

3  is going to testify to.  He's going to hit the stand and he's

4  going to testify.  And then to say "oh, we have a document that

5  supports your testimony" is just improper bolstering.

6     But certainly "Arvind will follow up" is not a

7  statement.  It's not a statement of the defendant.

8     THE COURT:  I would agree.  This is an impression that

9  the writer apparently has as to what, if anything, the defendant

10  will be doing.  He can certainly testify to what he knows.  But

11  I don't see how this statement is one that would -- should be

12  admitted as an accountant's notes with respect to anything that

13  the accountant has to do in order to prepare the material he's

14  working on.

15     Perhaps the government can say something more, but at

16  this stage I have to agree with the defense.

17     MS. SISKIND:  Nothing further at this time,

18  Your Honor.

19     THE COURT:  35.

20     MR. KIRSCH:  Your Honor, I think the other ones are

21  more straightforward.  35 and 38 are both the same.  They're

22  e-mails that were sent by HSBC bankers to an e-mail address that

23  was associated with the defendant.  But the defendant wasn't the

24  only one that used the e-mail address, and that's clear from

25  government e-mails that they struck out.

1    For instance, if you look at 35, that's not the

2    defendant's e-mail address at all.  And the e-mail is from

3    Ankush Tandon to -- the defendant does not use that e-mail

4    address and it says "You are welcome.  We also got confirmation

5    that the credit card PINs would be delivered to the UK address.

6    Enjoy your holiday."

7    That's not admissible for any purpose.  That's a

8    hearsay statement by Ankush Tandon who is not a co-conspirator.

9    There's no exception to the hearsay rule for that reason, just

10   as there's no exception to the hearsay rule to the dozens of

11   e-mails that the government's already withdrawn.

12   So 35 has to go.  And 38 -- although it's addressed to

13   Dr. Ahuja -- so 38 is a little different than 35 because it's

14   actually addressed to Dr. Ahuja.  It's sent to a different

15   e-mail address, natasha2@bloomberg.  But, again, this is a

16   statement of Priti Dhanani, it's not a statement of the

17   defendant, and it is a hearsay statement that does not fall with

18   any of the hearsay exceptions for the same reasons that the

19   government withdrew the co-conspirator hearsay statements and

20   the reason that the government withdrew the other 803(6) e-mails

21   that are just between the bankers.  They can't prove that this

22   is a business record.  It's not a statement of the defendant.

23   And so both 35 which they can't even establish was sent to the

24   defendant, and 38, need to go because they're hearsay with no

25   applicable exception.

235

1    THE COURT:  All right.  Let's hear from the

2    government.  And would you please start with telling me whether

3    or not you can show that this was indeed sent to the defendant?

4    MS. SISKIND:  First, Your Honor, for the e-mail

11:54   5    address natasha2@bloomberg.net in Exhibit 38.  Ramit Bhasin will

6    testify that that was a e-mail address he frequently used to

7    correspond with the defendant.  And the issue of whether someone

8    else may at sometimes also have used that e-mail address goes to

9    the weight the jury should give to this exhibit and not to its

11:55   10    admissibility.

11    As to the e-mail address aahuja3803 --

12    THE COURT:  Well, let's first talk about whether or

13    not you will, through testimony that you will be providing

14    before you offer Exhibit 38, establish anything with regard to

11:55   15    the e-mail address.

16    MS. SISKIND:  Yes, Your Honor.

17    THE COURT:  All right, go ahead.

18    MS. SISKIND:  Ramit Bhasin is intended to been the

19    government's first witness at trial.  He will testify before

11:55   20    this e-mail is offered into evidence.  And he will testify that

21    he had frequent e-mail communication with the defendant

22    utilizing the e-mail address natasha2@bloomberg.net.

23    THE COURT:  All right.  What else will you show

24    respecting Exhibit 38?

11:56   25    MS. SISKIND:  Exhibit 38 is not offered for the truth

236

1    of the matter asserted.  It is offered to show the defendant's

2    state of mind, and specifically his knowledge with respect to

3    whether he had foreign bank accounts.

4         In order to sustain our burden of proof on the charges

5    in this case, we need to prove that the defendant knew he had

6    interest income earned from foreign bank accounts.  And we

7    anticipate that one of the defenses in this case might be that

8    the defendant did not know these were foreign bank accounts and

9    merely thought they were foreign investments or something else

10   of that nature.

11        E-mails from bankers that were sent to the defendant

12   on the subject of foreign bank accounts goes to his knowledge

13   about the existence of those accounts.  And in this particular

14   e-mail 38, the subject is bank statements for the defendant's

15   HSBC-Jersey accounts.

16        THE COURT:  Is the same true with regard to 35?

17        MS. SISKIND:  Yes, Your Honor.  This one relates to

18   credit card PINs for the HSBC-Jersey account.  It is directed to

19   an e-mail address that is associated with the defendant.

20        If the court looks at Exhibit 29, there is another

21   e-mail from the defendant using that same e-mail address.  And

22   even though Mr. Kirsch indicated last week that that was an

23   e-mail address jointly used by Arvind Ahuja and Namrata, the

24   court can see that when the e-mail comes from aahuja3803@aol.com

25   in Exhibit 29, the e-mail is signed "let me know, thanks, AA."

237

1    And the government would submit that establishes that the

2    defendant utilizes the e-mail address that is on Exhibit 35.

3         THE COURT:  The defense objection is overruled.  I'll

4    allow the admission of each.

5         MR. KIRSCH:  Your Honor, can I make just one statement

6    for the record?

7         THE COURT:  Go ahead.

8         MR. KIRSCH:  I didn't respond.  The government argued

9    that they're not being offered for the truth of the matter

10   asserted.  Then they're irrelevant.  The government can't show

11   that Dr. Ahuja ever saw these e-mails, that Dr. Ahuja ever read

12   them, and it would be unfair for the government to be able to

13   argue to the jury that just because they were sent they should

14   go to prove Dr. Ahuja's state of mind.

15        They might be able to prove Priti Dhanani's state of

16   mind and Ankush Tandon's state of mind, but they do nothing to

17   show the defendant's state of mind and, therefore, they're

18   irrelevant, if that's the basis for the government's admission

19   of these documents.

20        THE COURT:  Well, he did not have exclusive use of the

21   e-mail address.

22        MR. KIRSCH:  Correct, Your Honor.  And that's borne

23   out by the document.  I never said that he never used the e-mail

24   address.  I've been clear from the beginning on that.  It's a

25   shared e-mail account.  He doesn't have exclusive -- but to

238

1    allow them to put these up in front of the jury and say the

2    defendant knew certain things would be improper because they

3    have no proof of that.  And that's the critical -- they have

4    absolutely no proof of it.

5               (Cellphone interruption.)

6               THE COURT:  No telephones are allowed to be on in this

7    courtroom.  It is my practice to retrieve all phones that ring

8    in this courtroom.

9               Would the bailiff retrieve the phone, please.  There

10   are two signs, one is on the outside door, one is in the

11   hallway, advising that telephones are not to be utilized in the

12   courtroom.

13              Does the government wish to respond to the last

14   comment?

15              MS. SISKIND:  Yes, Your Honor.  The e-mail on its face

16   goes to the defendant's state of mind.  The issue of whether he

17   actually ever saw either one of these e-mails is an issue of

18   weight and not admissibility.  Certainly the defense can call

19   their client, they can call his wife, they can call other

20   people --

21              THE COURT:  Well, we're not going to suggest that the

22   defense must call the defendant.

23              MS. SISKIND:  Of course not, Your Honor.  They could

24   call other witnesses familiar with the fact that other people

25   utilized this e-mail address and then argue to the jury that

239

1    because other people sometimes use this e-mail address it can't

2    be attributed to the defendant or to his state of mind.  But on

3    the face of this e-mail, it was sent to an e-mail address

4    utilized by the defendant and it goes to his state of mind.

12:01    5         THE COURT:  So the government is not conceding that

6    this e-mail address is one that the defendant uses along with

7    other people.  You're suggesting that the defense has to come

8    forward with testimony that this is a shared use account.

9         MS. SISKIND:  Certainly the defense has no burden.

12:01   10    But the government will put on evidence that the defendant has,

11    on multiple occasions, utilized these e-mail addresses.

12    Certainly the defense even without putting on a case can argue

13    the inference that we have not proven that the defendant had

14    exclusive control of this e-mail address.  I don't think we'll

12:02   15    be able to prove that he had exclusive control of this e-mail

16    address.  But we'll be able to present facts to the jury from

17    which they can conclude, if they so choose, that he received

18    these e-mails.

19         MR. KIRSCH:  Your Honor, before the government gets to

12:02   20    the issue of weight they've gotta have some -- even a scintilla

21    of evidence regarding admissibility.  They can't just stand

22    behind the, well, Judge, let's throw it in front of the jury and

23    let's see what they -- the government can make any argument they

24    want or the defense can make any argument they want, they can

12:02   25    call their client, they can call any witness they can't, we can

1    argue what we want and the defense can argue what the defense

2    wants.  That is not -- that's not the test for admissibility,

3    and that's exactly what they're suggesting to the court.

4         THE COURT:  But they have indicated that there will be

12:02    5    testimony that your client has utilized this e-mail account.

6    And by virtue of that testimony and this exhibit showing a

7    communication sent to the account -- an account used by your

8    client, the government can attempt to demonstrate that your

9    client had certain information that would provide a support for

12:03    10    one of the elements of the crime charged.

11         I will consider this a little more.  Tentatively, as I

12    said, I was ruling that the government could admit the exhibit.

13    But I will give it some additional thought and let you know as

14    soon as I can.

12:03    15         MR. KIRSCH:  Thank you, Your Honor.

16         THE COURT:  Is there anything else?

17         MR. KIRSCH:  Yes, Your Honor.  There's one more

18    evidentiary matter that I think we need to discuss which has to

19    do with the screen shots and possible redactions to the screen

12:04    20    shots.

21         The government in their brief, one of the reasons --

22         THE COURT:  Are you talking about, again, 69 and 71?

23         MR. KIRSCH:  69 through 71.

24         THE COURT:  All right.

12:04    25         MR. KIRSCH:  So one of the reasons the defense

1  objected to the documents coming in is that it's the only

2  evidence that the government has.

3          If you look at the screen shots.  If you take -- I'll

4  just give you an example.  If you take the second page of -- I'm

5  sorry, the third page of Government Exhibit 69, which is Bates

6  stamped HSBC-DOJ 27690.  Right up at the top it says "account

7  number."  And then it lists various accounts.

8          And what the government's gonna do, because they made

9  this perfectly clear in their brief on 807, what the government

10  is going to do is try to use these exhibits in an impermissible

11  way.  They're going to try to use these exhibits to establish

12  that Dr. Ahuja had foreign accounts and that Dr. Ahuja knew that

13  he had foreign accounts.

14          But that is entirely unfair, even based on the

15  government's own exhibit.  This is part of the problem with

16  those screen shots.  If the court now goes to Government Exhibit

17  82, this is a letter signed by the defendant.  And you see,

18  Your Honor, the exhibit -- or, I'm sorry, the letter signed by

19  the defendant says "CD number" and then it lists all of these

20  different CD numbers.

21          But the government wants to use the screen shots in

22  Government Exhibit 69 to argue that these were account numbers,

23  and the defendant thereby knew that he had foreign accounts.

24  But there's absolutely no evidence that the defendant ever saw a

25  single screen shot.

242

1    In addition to our earlier arguments which I'm not

2  going to repeat to the court, I think that at a very minimum --

3  I mean, you know we don't think the screen shots should come in

4  to begin with.  But at a very, very minimum the account number

5  has to be redacted.

6         The inquiry line where it says "inquiry by customer"

7  up at the top has to be redacted.  The court has relied on the

8  testimony of Ms. Katju, but Ms. Katju has never ever reviewed

9  these records.  So the court is admitting documents based upon

10  the testimony of a witness who said as far as she knew the

11  exhibits could be in Spanish or in German.

12         So although she testified that she relied on screen

13  shots, she never testified that she relied on these screen

14  shots.  And that's a major problem in this case.  Because when

15  they start putting in documents that says "inquiry by customer,"

16  and we have absolutely no idea who made this inquiry -- there

17  will be no testimony whatsoever except the face of the document

18  that says the inquiry was made by Arvind Ahuja.  There's no

19  testimony in the record from Ms. Katju or from anybody else at

20  HSBC that this line on the screen shot is correct or even

21  remotely correct.  There's no testimony as to when the screen

22  shot was accessed or when it was created.

23         The page numbers.  If the court looks at the page

24  numbers, just the sequential numbering of the Bates numbers of

25  the pages, they're all off.  I mean, they're not sequential in

243

1    any way.  So I don't know what these are.  And now we've got

2    them coming in evidence.

3              THE COURT:  One second.  Let me make sure I know what

4    you're referring to when you say "these" page numbers and

12:07    5    "these" screen shots.

6              MR. KIRSCH:  I'm sorry, Your Honor.  I'm not being

7    clear.  On Exhibit 69 if you look at the first screen shot that

8    the government submits is 27689.  Then 27690.  27691.  But then

9    we go to 27783.  27784.  27785.  27786.  And then 27727.  Then

12:08    10    27728.  You see the pattern.  27729.  27720.

11             So we've got documents that are coming in evidence,

12    based upon the testimony of a witness who has never ever seen

13    these documents, under the residual hearsay rule.  But we don't

14    know, and we'll never know, who made the inquiry for the

12:08    15    creation of these screen shots.  We don't know and we'll never

16    know when the information was put into these screen shots as the

17    court ruled on Friday.  We'll never know that Dr. Ahuja ever saw

18    these screen shots because he didn't.

19             The government wants to use these screen shots for an

12:08    20    improper purpose and argue that they were account numbers when

21    Dr. Ahuja clearly believed from other exhibits that they were CD

22    numbers.

23             And, Your Honor, I'm just -- I just -- I make the

24    motion in limine, but I'm just concerned that the way the

12:09    25    government's gonna use these we're headed down the path for a

244

1  mistrial based upon these particular documents.  Because once

2  the government makes the arguments that it wants to make from

3  these documents, I think that's where we're gonna be,

4  Your Honor.

5  12:09      And that sort of sums up at least some of the

6  objections.  And then in our papers we've pointed out that there

7  are e-mails from bankers.  We cited in our papers and we

8  attached them to our papers two e-mails that suggest that the

9  screen shots may not even be accurate.

10  12:09      THE COURT:  Please respond.

11      MS. SISKIND:  Your Honor, the defense is

12  misrepresenting the purpose for which the government is offering

13  these screen shots.

14      The court can see, for example, Exhibit 69, the very

15  12:10  first page of the exhibit is a summary chart.  Special Agent

16  Geoffrey Cook for 81 and 79 will testify that in calculating

17  what the high balance was in the defendant's HSBC-India accounts

18  for each of the years at issue he relied on the screen shots.

19      For purposes of our trial exhibit we only exhibited

20  12:10  those screen shots that he actually used in making that

21  calculation.  And that's why there's gaps in the Bates numbers.

22  There are more screen shots that were produced to the defense in

23  discovery that fill in those gaps.  But there was no need to

24  show the jury irrelevant screen shots, and so we only selected

25  12:10  those that Agent Cook used when doing his calculations.

245

1        The same holds true for Exhibit 71. The first page of

2  that exhibit is a summary chart. Agent Cook will testify that

3  the screen shots following that summary chart are only those

4  screen shots he relied upon in making a calculation of

12:11  5  unreported interest income. Irrelevant screen shots were

6  excluded. We're not trying to show other screen shots to the

7  jury that do not underlie his calculations. So that explains

8  the gap in Bates numbers.

9        As far as the line on the record "inquiry by

12:11  10  customer," we have no objection to redacting that line. That's

11  not what we're offering these records for. The records were

12  being offered like any other bank records: to prove their

13  contents, to prove unreported income, to prove high balances.

14  The fact -- what it may mean when it says "inquiry by customer,"

12:11  15  the government does not intend to rely on that statement and has

16  no objection to redacting that line off of each and every screen

17  shot.

18        THE COURT: All right. That should be done.

19        MR. KIRSCH: Your Honor, can I make a comment? I want

12:11  20  to read -- I want to read -- I just want to read a sentence from

21  the government's brief that they filed last night at 10:00

22  o'clock regarding the importance of these screen shots and what

23  the government is intending to use these screen shots for. And

24  I don't --

12:11  25        THE COURT: One second. Hold up, please.

246

1       MR. KIRSCH:  Yes, Your Honor.

2           (Brief pause.)

3           THE COURT:  I'm trying to pull up information on my

4   computer.

12:12   5       MR. KIRSCH:  Your Honor, I'm looking at page 16 of the

6   government's filing.

7           THE COURT:  Page 16?

8           MR. KIRSCH:  Yes, Your Honor.  Should I continue?

9           THE COURT:  Go ahead.

12:13   10      MR. KIRSCH:  Your Honor, in the middle of the page

11  after materiality, the materiality comes after -- page 13, 14,

12  and 15 they set forth what they want to use and they try to

13  argue that they are accurate.  And, Your Honor, there are

14  inaccuracies in their tables.  Their very tables are inaccurate.

12:13   15      And I can point the court how.  They count some CDs

16  twice.  They have dates wrong.  There are numerous inaccuracies

17  in the table which reflect -- I'm just afraid when they call

18  Agent Cook we're gonna have a mistrial.

19          But, in any event, materiality, in the middle of that

12:14   20  paragraph, they cite the correct standard that starts:  "To

21  convict the defendant of failing to file a Report of Foreign

22  Bank and Financial Account, FBAR, the defendant must prove that

23  the defendant must have a financial in or signature or other

24  authority over a foreign bank account."

12:14   25      Then I go to the negligence sentence:  "Accordingly,

247

1    the government must prove that:  1.  The defendant had one or

2    more foreign bank accounts."

3           And then you go to the next paragraph, Your Honor, and

4    the government tells you exactly how they're gonna use the

5    screen shots, when they write:

6           "The HSBC bank records establish all of these facts.

7    In addition to bearing the defendant's name, these records also

8    contain bank account numbers that match the account numbers

9    listed on letters signed by the defendant.  This establishes

10   that the defendant had bank account in India with HSBC and the

11   defendant was aware of the existence of those accounts."

12          That's exactly what these screen shots do not do.  And

13   the problem is, when they call Agent Cook, and Agent Cook's

14   gonna testify and talk about the contents, and they're gonna ask

15   him, he made calculations based on the screen shots, he's not

16   going to be able to say one word about the accuracy of these

17   screen shots.  And even if they call Ms. Katju, Ms. Katju is

18   gonna say I've never seen these documents.  I've never seen

19   them.

20          So now we've got a critical piece of evidence coming

21   in which I submit to the court is unreliable.  And there are, in

22   addition to falsely suggesting that CDs were account numbers on

23   the government's charts on page 12, 13, and 14, they have --

24   they count the same CD twice in one instance.  They have -- they

25   have dates wrong.  They have maturity amounts wrong.  And you

1    just -- the problem, Your Honor, is you can't follow the screen

2    shots.  And certainly Agent Cook is never going to be able to

3    testify that he follows --

4         THE COURT:  Give me an example of what you're

5    referring to as an inaccurate entry.

6         MR. KIRSCH:  Well, Your Honor, on line 12 on page --

7    I'm sorry, on page 12.  First of all, the government cites

8    Government Exhibit 20.  And they want to use this -- they want

9    to use Government's Exhibit 20, which I can't even read those

10   exhibits, but they want to try to use those exhibits to

11   establish that Dr. Ahuja knew he had accounts and they want to

12   combine those with the screen shots.

13        But Exhibit 20 refers to "fixed deposits," which do

14   not mean accounts.  They're not synonymous with accounts.

15        Then, the government uses Government Exhibit 20 and

16   Government Exhibit 29.  And in Government Exhibit 29 on their

17   chart, they have 6/13/08.  That's not right, it's 6/13/06.  They

18   have an amount of $1,820,500.  But on the preceding line which

19   says Government's Exhibit 20, and then they have a date of

20   8/2/05, and they have an amount of a million dollars, that's

21   wrong.  That amount is actually I believe 1,820,500.  So they've

22   transposed the numbers in their first line and their second

23   line.

24        And then what happens is I believe the second line and

25   the third line is the same -- it's the same thing.  And they've

1    counted it twice.  That's what I think happened.

2            THE COURT:  Is this Exhibit 20 and Exhibit 29?

3            MR. KIRSCH:  Exhibit 20 and Exhibit 29.  So you first

4    look at Exhibit 20 which is extremely difficult to read.  But if

12:17  5    you look at the third page of Exhibit 20, which is

6    HSBC-DOJ-027701, it talks about a maturity date of June 12,

7    2006.  And then you go to 29 --

8            THE COURT:  One second.

9            (Brief pause.)

12:18  10           MR. KIRSCH:  I think that's June 19th.  I'm not even

11   sure.  The government has in their chart June 13th, but I can't

12   read that document, Your Honor, and I don't know that anybody

13   can read it.  For the record, it's a letter dated August 9th, it

14   looks like 2005, to the manager, in a place called Mauritius.

12:18  15   It's M-A-U-R-I-T-I-U-S.  And it says, "dear sir," and in the

16   first line it says "I have placed in amount of U.S. dollars,"

17   and it looks like 1.820 million, on June 17, and I can't read

18   the year.  But it looks like it says "a maturity date of June,"

19   and I can't read, it looks like 19, 2006.

12:19  20           THE COURT:  Are you referring to Exhibit Number 20 at

21   Bates 027700?

22           MR. KIRSCH:  01, Your Honor.  The next page.

23           MS. SISKIND:  Your Honor, there are some typos in the

24   chart, we concede that.  But I don't know if that goes to the

12:19  25   underlying issue here.

250

1        MR. KIRSCH:  Your Honor, I don't think they're typos.

2   I mean, I think I'm pointing out these inaccuracies now and

3   they're not typos.  They're very difficult.  Under Rule 403 if

4   nothing else these screen shots should be prohibited.  Because

12:19   5   the court now understands I think the importance of these

6   documents, but they're just not reliable.  And what the

7   government's gonna try to do with the agent --

8        THE COURT:  Hold up, please.

9        (Brief pause.)

12:20   10        THE COURT:  Go ahead.

11        MR. KIRSCH:  Your Honor, now, if you look at that

12   document and then you compare it to 29.  In 29 there's a

13   question "Is there a CD due June 14th?  Thanks.  Let me know.

14   AA."

12:20   15        And then there's a response from Ankush Tandon, at the

16   top of the page it says, "There is one deposit of U.S. dollars

17   1.8205 million that is maturing on June 19th, 2006.  Please let

18   me know what is to be done."

19        Now, the government has -- the government on their

12:21   20   chart in their brief they have Government Exhibit 29.  Then they

21   cite a date of June 13th, 2006.  I don't know what date -- or

22   2008.  That '08 is probably a typo.  I don't know what June 13th

23   refers to.  But, Your Honor, I submit that the 1.8205 million

24   that they cite in 29 may or may not be the same thing that they

12:21   25   cite in 20.

251

1    But then they go to the screen shots, and they've got

2  two different pages of screen shot that they cite.  And,

3  Your Honor, I mean, it's so confused that they can't even get it

4  right on the table that they filed over the weekend and they

12:22    5  want the court to admit these documents under 807 because they

6  say they're reliable.

7    THE COURT:  Well, the reliability of the chart is not

8  at issue with respect to the admissibility of the screen shots.

9    MR. KIRSCH:  I agree, Your Honor, but I think that --

12:22   10  what I'm saying is I think that the government -- I think if you

11  look at the government's chart, the errors in the government's

12  chart demonstrate the unreliability of the screen shots.  It's

13  the same thing if you look at page 13 of their brief.  And on

14  page -- I'm sorry.  I'm getting ahead of myself.

12:22   15    MS. SISKIND:  Your Honor, all these demonstrate is

16  that we made a mistake when making a chart for the court last

17  night.  They do not demonstrate anything about the screen shots

18  or Agent Cook's testimony at trial.

19    THE COURT:  Let him finish, please.

12:22   20    MR. KIRSCH:  Your Honor, if you go to 13.  On page 13

21  they have -- they're using Exhibit 82, which refers to CD

22  numbers, and they're using that I say correctly here in certain

23  respects.

24    THE COURT:  One second.  Exhibit 82 on page 13 of the

12:23   25  brief?

252

1          MR. KIRSCH:  No.  Page 13 of their brief and then

2     Exhibit 82.

3          THE COURT:  I see -- I don't see --

4          MR. KIRSCH:  Down at the bottom.  So there's a

5     paragraph in the middle of the page that's in prose, Your Honor.

6     It says Government Exhibit 82.

7          THE COURT:  Okay.  All right.  Okay.

8          MR. KIRSCH:  So they use 82 to create the chart.  But

9     if you look at 82, what 82 does is it has certain CD numbers and

10    maturity dates.  And then they use their chart on page 13 and 14

11    and 15 of their brief to add principal, principal in India

12    rupees, principal in U.S. dollars, and then they cite to a

13    screen shot.

14         THE COURT:  All right.

15         MR. KIRSCH:  But then what they do, on page 16, when

16    they're discussing why these screens -- that's where you get to

17    page 16 where they're discussing what is so important about

18    these screen shots.  They transposed these from CDs to foreign

19    bank accounts.  And so they're using these screen shots which --

20    they're using these screen shots in an entirely inappropriate

21    way.

22         I mean, they say the screen shots establish that the

23    defendant had bank accounts in India with HSBC, and the

24    defendant was aware of the existence of those accounts.  These

25    screen shots established nothing like that, Your Honor.  Nothing

253

1       like that.  And the problem is, we have now got documents that

2       are coming into evidence under Rule 807 that we submit are not

3       reliable under 807 because there's inaccuracies in the

4       documents, and we point that out in our -- we have two e-mails,

5       Your Honor, that we attached to our papers last night that

6       suggests that screen shots could be inaccurate.  And we've got a

7       witness -- a records custodian, this Ms. Katju, who has never

8       seen these documents.  And now we've got an agent who is going

9       to testify --

10              THE COURT:  Well, Ms. Katju wasn't the records

11      custodian.  It was Mr. Maciejewski.

12              MR. KIRSCH:  Well, I don't even think the government

13      offered his testimony.  I think the government offered his

14      testimony on the e-mails.  But I don't think -- and the fact

15      that these things came from HSBC servers.  But they did not

16      offer his testimony -- he's never seen these screen shots

17      either.

18              But we've got -- what we've got, Your Honor, right now

19      are screen shots that e-mails from HSBC bankers attached at

20      Exhibits D and E to our brief.  HSBC bankers suggest that screen

21      shots may be inaccurate.  We've got a custodian who has never

22      seen the screen shots.  And we've got an agent who has tried to

23      interpret the screen shots and has made mistakes in doing so.

24              And that's the record that the government's gonna use

25      to try to convict Dr. Ahuja.  And that's why we suggest that

254

1  these screen shots should be out altogether under Rule 807, but

2  even if they were coming in they have to be severely redacted.

3  So the government --

4           THE COURT:  Well, at the very least they are to be

5  redacted to mask any reference customer inquiry.  Now, what else

6  should be redacted?  I've already ruled with regard to

7  admissibility.

8           MR. KIRSCH:  Your Honor, account numbers should be

9  redacted.  The date on the screen shot should be redacted.

10 There's no evidence and nobody will be able to testify as to

11 whether or not that's the date the screen shot was printed,

12 whether that's the date the information was requested, whether

13 that's the date the information was inputted.  All those things

14 should be redacted.

15          So, we've got "inquiry to customer" should come out,

16 account numbers should come out, and the date on the screen shot

17 should come out, at the very least.

18          THE COURT:  Let's hear about account number first.

19          MS. SISKIND:  Well, Your Honor, they are the account

20 numbers.  The fact that they may also refer to CDs doesn't

21 change the fact that the bank in this record is referring to it

22 as an account number.  I didn't make that up.  It's what the

23 bank is calling these numbers in a record.

24          The fact that they are actually referring to -- that

25 each sub-account is actually a CD still doesn't change the fact

1    that the bank in this record is calling these things account
2    numbers.

3            THE COURT:  All right.

4            MS. SISKIND:  As to the date on the record, that is an
12:27  5    essential piece of information on these records because that is
6    what enabled Special Agent Cook to determine which records were
7    relevant for determining high balances and interest income for
8    each year.  If you take the date off, then there is really no
9    relevance to the document whatsoever because it's impossible to
12:28  10    tell what year they relate to for purposes of proving unreported
11    income and high balance.  So the date is an essential piece of
12    information on here, account information --

13            THE COURT:  The question is not whether or not the
14    date is an essential piece of information, the question is
12:28  15    whether or not the date should be masked because of some lack of
16    materiality or, alternatively, lack of proof.

17            MS. SISKIND:  Your Honor, first I would submit the
18    date is material, and I can't think of any reason why the date
19    should be masked.  The record is a picture of a moment in time
12:28  20    on a computer.  The date is part of that record.  I can think of
21    no basis under which that date should come off.

22            Inquiry by customer is different because that bears on
23    an issue as to the defendant's state of mind and what exactly
24    that means.  But the date is what it is, and the date is part of
12:29  25    this computer record and should remain there.

1       MR. KIRSCH:  Your Honor, if I can address the date

2   issue.  In light of what the government's just said I would

3   renew our motion under Rule 807 and I will tell the court why.

4   The court started the proceedings today -- and we can look at

5   the transcript for this -- the court started the proceedings and

6   came out and asked a very important question:  "When were these

7   documents prepared?"  And the government said, "Well,

8   Your Honor, if you look at the screen shot it says September 6,

9   2009."

10      And I then argued at the very end because I wanted to

11  make this point again because I knew how important the court's

12  question was.  I said, Your Honor, the government pointed to the

13  date on the screen shot, but it doesn't say anything about when

14  the information was -- it doesn't say -- all they can do is

15  point to the date of the document.  It doesn't say whether it

16  was the date the document -- the information was requested,

17  whether the date the document was inputted, whether it was the

18  date the screen shot was created.  We don't know what that date

19  means.  We do not know.

20      And now the government has suggested to the court --

21  that is a huge issue.  And now the government suggests to the

22  court, well, that's the relevance of the documents, the date.

23  And the court -- and the court correctly recognized Ms. Katju.

24  There has been no testimony regarding what this date means.

25  We're just guessing.  And now the government has said, well,

257

1    Judge, that's the whole -- that's it, that's the whole

2    importance of the record, and we're just guessing as to whether

3    that date means the date the information was reported to HSBC,

4    the date the information was recorded in the screen shot, the

5    date the screen shot was requested by the customer or by

6    somebody in the HSBC in New York, or the date the screen shot

7    was permitted -- or printed.  So off the top of my head I can

8    think of four things that that date might mean.  And the

9    government just said that's our whole relevancy argument, is the

10   date, and we don't know what the date means.

11         They said that -- that was the first -- the first

12   words -- I think the first words out of the court after good

13   morning were when were these documents prepared.  And we can

14   look at the government's response, they don't know.  And now the

15   government's conceded without that information the documents are

16   not relevant.

17         So we would renew and we would request the court to

18   reconsider its ruling that these documents come in, Your Honor.

19         THE COURT:  Ms. Siskind, I want to get a very clear

20   understanding of how you will use this information and what

21   you're saying with respect to the date shown in the screen shot.

22         MS. SISKIND:  First in terms of how we're going to use

23   them.  The summary charts that are page 1 of Exhibit 69, page 1

24   of Exhibit 71, that is the primary way in which we are going to

25   use these screen shots:  To support Agent Cook's testimony about

258

1    how he arrived at a calculation of unreported income, and how he

2    arrived at a calculation of the high balance in the account.

3         So the summary charts in Exhibit 69 and 71 are

4    followed by the underlying documents.  So it's to support how he

12:32    5    came to certain calculations.

6         THE COURT:  But you do concede that the summary chart

7    is inaccurate at this point.

8         MS. SISKIND:  As far as the government knows of

9    Mr. Kirsch -- not the table in our pleading last night.  The

12:32    10   summary charts in our exhibits.  It's two different things.

11        THE COURT:  All right.

12        MS. SISKIND:  The table we prepared last night was

13   prepared for last night to provide the court with corroboration

14   as to the screen shots.  The table in our motion is nothing we

12:32    15   intend to use in that form at trial.  What we intend to use is

16   what has an exhibit sticker on it that says 69 and what is

17   stickered as 71.

18        THE COURT:  All right.  Okay.

19        MS. SISKIND:  As far as the date on the documents,

12:33    20   Ms. Katju testified that these screen prints came from a

21   computer system.  Your Honor can see just from what this looks

22   like, there's a file menu, an edit menu.  This is a screen shot.

23   There's a date on this document.  The inference to be drawn from

24   that is that is the date that was sitting on the computer -- if

12:33    25   a person was sitting at the terminal that day, that is the date

259

1    that appeared on the screen.  That establishes that this record

2    was created on or about the date that appears on here.

3           And when I say "this" record, I mean the screen shot.

4    There is a difference between on what date somebody inputted

5    information into a computer and on what date a screen shot was

6    prepared.  The question of when these screen shots were prepared

7    I think is answered by the date on the document unless there is

8    some evidence that the computer system had a mistake on the date

9    and there's been no testimony -- while there has been testimony

10   about the subject of the screen shots, there's been no

11   indication that the dates in the HSBC computer are some way

12   unreliable.

13          There's a date on this document --

14          THE COURT:  So just to simplify matters, the

15   government will only argue that the screen shot reflects the

16   status of those accounts or CDs as of the particular date that

17   is set out in what is pictured.

18          MS. SISKIND:  Yes, Your Honor.

19          THE COURT:  All right.

20          MS. SISKIND:  And I do just want to make clear for the

21   court so I'm not misrepresenting our position, these screen

22   shots underlie Agent Cook's calculations.  But to the extent the

23   defendant has written e-mails or letters in which he refers to

24   account numbers or CD numbers on these documents, we would offer

25   those letters from the defendant.

260

1    For example, Exhibit 82 being the prime example.  That

2  is a letter in which the defendant refers to several CD numbers

3  that also make an appearance on the screen shots.  The

4  government will be offering that evidence to show that --

5    THE COURT:  Or he makes reference to numbers that

6  appear in the screen shots.

7    MS. SISKIND:  He calls them CD numbers in Exhibit 82.

8  The fact that he calls them CD numbers and a bank record calls

9  them account numbers I don't think makes a difference as to what

10  they are.

11    But we would argue to the jury that based on the

12  letter he wrote to the bank in Exhibit 82, he was aware that

13  certain CDs that are reflected in these screen shots existed.

14  So it's not that we're using the screen shots to prove he

15  actually saw them because it says "inquiry by customer;" but the

16  inference from the fact that he refers to information that is

17  contained in those screen shots, the jury could conclude that he

18  was familiar generally that he had foreign bank accounts and

19  that those accounts are the subject of these screen shots.

20    THE COURT:  All right.

21    MR. KIRSCH:  Your Honor, just very briefly.  The

22  government's argument just now sets out -- sets forth why these

23  documents are not admissible under 807.  The government has sort

24  of turned its argument on its head.  They're now arguing that

25  the screen shot -- that what you're looking at -- we don't know

1    this to be true, this is what the government is arguing based on

2    what Ms. Siskind, I quote, "from what this looks like," end

3    quote, is -- if you look at a screen shot, I'm looking at --

4    just so we're on the same -- the exact same page, I'm looking at

5    HSBC-DOJ-27737.  And that's the third page of Government

6    Exhibit 71.  And there's a date up at the top that says January

7    3, '06.

8            And Ms. Siskind is now suggesting to the court that

9    that date is the date on which the screen shot was prepared.  So

10   Your Honor, if that is in fact the date on which the screen shot

11   that the snapshot occurred and took place, there is absolutely

12   no evidence in the record -- none, none -- that the information

13   contained in the screen shot as to when it was put in or when

14   the information in the screen shot was created.  There's none.

15           THE COURT:  The government is not suggesting that this

16   screen shot reflects when the information was created.  What I

17   understand the government has said is, this screen shot reflects

18   what was displayed on bank terminals with respect to these

19   matters on the date mentioned, that is, January 3rd of 2006.

20           MR. KIRSCH:  I agree.  And because -- and now we're

21   back to Friday's argument.  Because the government has no

22   evidence as to when the information in the screen shot was

23   created --

24           I mean, if you take a newspaper article without any --

25   without any date on it.  So you got a newspaper article.  And

1  you take a picture of a computer. And the picture of the

2  computer is taken today's date. And it says -- I don't know, it

3  says "Cardinals win the World Series." And then you try to

4  argue, well, the Cardinals won the World Series on August 13th,

5  2012 because that's what the screen shot says, we don't have any

6  information as to when that information was inputted, whether it

7  was accurate at the time it was inputted into the computer.

8       So all we know is we take a picture of the screen shot

9  on today's date. That's the hearsay problem. And that's the

10  problem that the court correctly identified on Friday. The

11  government has no evidence as to when that information contained

12  in the screen -- forget the fact that it's a screen shot for a

13  minute. They have no -- if it was any other document other than

14  a screen shot it doesn't matter that it's a screen shot. That's

15  my point, Your Honor. The fact that it's dated January 13th,

16  2006 or January 3rd, 2006 under the government's argument is

17  irrelevant. Because they can't -- they can't get past the

18  hearsay exception by arguing that this information was inputted

19  at the time by somebody with knowledge. They have no idea how

20  the information was put in.

21       THE COURT: Well, as we discussed earlier and at the

22  time I made my decision under the residual hearsay rule, there

23  are indicia of reliability that include the fact that Ms. Katju

24  and the records custodian indicated for the record the

25  regularity with respect to which these materials are utilized by

263

1    HSBC.  And, in particular, Ms. Katju testified that while in

2    India, and later while in the United States, especially during

3    her period of employment in the New York office, she and her

4    colleagues used screen shots to convey information to customers

12:40   5    in response to customer inquiries and that they interpreted

6    these screen shots rather than having junior associates in India

7    interpret the screen shots so that they could be as accurate as

8    possible in advising customers respecting their various

9    accounts.

12:40   10           It's pretty apparent from what is in the record that

11    the accuracy of the screen shots was something that was relied

12    upon by the NRI employees in communicating with customers.  And

13    so, this is not as you suggest.  This is not a case where you

14    have a mere screen shot without further testimony or explanation

12:41   15    with regard to the dates and times.  This is not a case of

16    someone saying I saw a computer screen that said something about

17    the Cardinals in 2011.

18           So the court's ruling stands.  The screen shot

19    information can be utilized.  I don't believe that the

12:41   20    inaccuracies in the brief are determinative.

21           Is there anything further?

22           MR. KIRSCH:  Your Honor, I'm also referring to the

23    accuracies in the screen shots as reflected in the defense

24    exhibits, not just the --

12:41   25           THE COURT:  You mean the government's exhibits?

264

1    MR. KIRSCH:  No.  We have exhibits that we attached to

2   our brief at Exhibits D and E that are e-mails that suggest that

3   screen shots are inaccurate.  And, of course, we're at a huge

4   disadvantage here because Ms. Katju never testified about these

5   screen shots.  She's never seen them.  All she can testify is

6   about screen shots that she used when she was in India, and she

7   was in the United States at this time.

8    But we have, in page 3 of 4 of Government's Exhibit D,

9   for instance -- it's very hard to prove a negative, Your Honor,

10   but we did the best we could.  And in Exhibit C, page 3 of 4,

11   right in the middle of the page, there's an e-mail that says

12   "Srini, I refer to my below mail for correction to place" --

13    THE COURT:  Hold on, please.  I have to make sure I

14   know what you're referring to.  Exhibit C of Government

15   Exhibit -- of government brief 135?

16    MR. KIRSCH:  No, no.  This is our brief, Your Honor.

17   It's document 135.  Defendant's 135.  Exhibit C.  Or, I'm sorry,

18   Exhibit D is one example.

19    And then if you go to page 3 of 4 of the document,

20   page 2 of the e-mail.  And it talks about how mistakes were

21   made.

22    THE COURT:  Hold on, please.  Page 3 of 4.  Okay.

23    MR. KIRSCH:  And if you start down at the bottom of

24   the page, it's an e-mail to Jaya, "one of the deposits."  And

25   it's making changes.  And then it's a follow-up e-mail.  And

265

1    Exhibit E is the same way.  Exhibit E is an e-mail that says "As

2    requested, please find the screen shot of J93."

3              THE COURT:  One second, where are you?

4              MR. KIRSCH:  Page 1.  Down at the bottom.  "As

12:44    5    requested, please find the screen shot of J93."  And then the

6    response is: "FYI only...  will crosscheck and confirm."

7              THE COURT:  One second.  Just for the record you're

8    referring to Exhibit document 135-5, page 2 of 4, correct?

9              MR. KIRSCH:  Yes, Your Honor.

12:45    10             THE COURT:  All right, go ahead.

11             MR. KIRSCH:  And then right in the middle of the page

12   after printing the information on the screen shot it says "Will

13   crosscheck and confirm if they've done them correctly."  And if

14   the information was always inputted correctly and the screen

12:45    15   shots were always prepared correctly, there would be no reason

16   or need to check and confirm that they've done them correctly.

17             And it's very, very difficult to prove a negative.

18   Very difficult.  But these two e-mails, if nothing else, suggest

19   that the information contained in the screen shots may not have

12:45    20   always been reliable and relied upon.

21             And again, I think it's of vital importance.

22   Ms. Katju, if you just look at the record, she's never -- she's

23   testifying to the reliability, and the court's relying on her

24   testimony to establish the reliability of documents she's never

12:45    25   seen.  I think I asked her "you don't know if they're in Spanish

266

1  or German," and she said "I don't know.  I don't know."

2          (Brief pause.)

3          THE COURT:  For the record, I'm looking at pages 7, 8,

4  9 through 12 of the defense brief 135.

5          (Brief pause.)

6          THE COURT:  Can the government comment on these

7  exhibits, in particular, the e-mails referred to in the defense

8  brief, pages 2, 3, and 4 of the attachment?

9          MS. SISKIND:  Yes, Your Honor.  Exhibits D and E to

10  the defendant's motion are e-mail chains that purport to show

11  inaccuracies in HSBC bank records.

12          I would first note that the inaccuracies at issue

13  aren't with respect -- they're with respect to an interest rate,

14  whether the client was entitled to a higher interest rate than

15  what he was the actually getting.

16          The second issue is, I didn't see anything in the

17  defendant's brief suggesting that these e-mails relate to any

18  inaccuracies on the screen shots the government is offering in

19  Exhibits 69 and 71.  So that does not tend to undermine the

20  reliability of the particular screen shots the government is

21  introducing.

22          And the third point I would make, Your Honor, is

23  neither Rule 803(6) nor 807 require a standard of perfection in

24  the records that the party is seeking to introduce.  The

25  standard under 807 is whether the records contain circumstantial

267

1    guarantees of trustworthiness.  And the court made extensive

2    findings this morning on all of the evidence the government has

3    presented to establish the reliability and the trustworthiness

4    of these documents.  And the fact that even if these e-mails do

12:53   5    show that a mistake was made at some point -- and I'm not

6    conceding and I'm not suggesting that is what they show --

7                THE COURT:  What, if anything, are you saying they

8    show?

9                MS. SISKIND:  Well, it appears that the 135-4, which

12:53   10   is Exhibit D, tends to show that the customer was given a

11   7.5 percent interest rate when, in fact, he should have gotten a

12   10.5 percent interest rate.  That doesn't necessarily show that

13   any of the information on any of the government's screen shots

14   is inaccurate.

12:54   15               The defense has not been able to tie these alleged

16   inaccuracies in Exhibits D and E to any screen shot that the

17   government is trying to introduce.  That, coupled with the fact

18   that the standard is trustworthiness not infallibility or

19   perfection of the records, these e-mails do not undermine the

12:54   20   reliability and the court's earlier findings today are

21   sufficient to establish the records of admissibility on under

22   807.

23               MR. KIRSCH:  Your Honor, if I can respond.

24               THE COURT:  Surely.

12:54   25               MR. KIRSCH:  Now, Your Honor, now we're clearly,

268

1    clearly within the scope of Idaho vs. Wright.  This is the road

2    that Idaho vs. Wright the Supreme Court tells us we should not

3    go down, and this is the reason.

4            In Idaho vs. Wright the Supreme Court in 1990 said,

12:54    5    and I quote:  "We are unpersuaded by the State's contention that

6    evidence corroborating the truth of a hearsay statement may

7    properly support a finding that the statement bears

8    particularized guarantees of trustworthiness.  Hearsay evidence

9    used to convict a defendant must possess indicia of reliability

12:55   10    by virtue of its inherent trustworthiness, not by reference to

11    other evidence at trial."

12            The government is trying to point to other evidence in

13    trial while now conceding, well, they might not be inherently

14    trustworthy, because mistakes clearly were made.  It's not our

12:55   15    burden to prove a negative.  It's not our burden to show that

16    these documents are false or they're wrong or they're

17    inaccurate.  The whole point, Your Honor, is, we can't.  I mean,

18    you can't prove a negative.  The government wants to use them to

19    show that they're accurate, but we have two instances --

12:55   20            In this e-mail which the court correctly identified,

21    which is document 135-4, page 3, right in the middle of the

22    e-mail there's -- right in the middle of the page there's an

23    e-mail that says, "Srini, I refer to my below mail for

24    correction, to place 278 and 279."  And then it goes on and it

12:56   25    talks, "If you see the below screen shots that 278 and 280 are a

 1    14.3 lacs and 16 lacs respectively and 279 is not existing at

 2    all."  And then she's requested, "Please do the following:  Send

 3    us confirmation with the J93 screen dumps showing the correction

 4    as requested."

 5         So we're now beyond.  I don't think the court should

 6    go beyond Idaho vs. Wright.  But once we go beyond Idaho vs.

 7    Wright in this case and we start trying to corroborate the

 8    statements with other evidence -- we're, first of all, beyond

 9    what the Supreme Court said we could do, but in this case the

10    government can't even do that.

11         And I think the court was absolutely correct to look

12    at paragraphs -- I'm sorry, pages 7 through 13 of our brief.

13    Because even if the court finds that Rule 807 does not say what

14    the defense position says it says, even when you get beyond that

15    and you talk about guarantees of trustworthiness, the government

16    wants to focus on circumstantial guarantees of trustworthiness.

17    But, Your Honor, 807 unequivocally states equivalent.

18    Equivalent.  And they can't establish 806.  Now we've

19    established that the screen shots may be wrong.  We've

20    established that we shouldn't even be looking at the screen

21    shots.  And the government -- we've established --

22              THE COURT:  Wait a minute.

23              MR. KIRSCH:  I'm sorry.

24              THE COURT:  How have we established that we should not

25    be looking at the screen shots?

270

1       MR. KIRSCH:  I misspoke.  I meant we should not be

2  looking at evidence to corroborate what's in the screen shots.

3  Under Idaho vs. Wright the Supreme Court has said don't do that,

4  that's not what it's about.

12:57   5       And so we look at 803(6), they can't establish 803(6).

6  But when we look at the screen shots themselves we've

7  established that there could be errors in the screen shots.

8       THE COURT:  But let me interrupt to ask you:  Doesn't

9  the information you point to indicate that there was an

12:58  10  obligation on the part of bank employees to accurately record

11  the information pertaining to a customer's account and an

12  ongoing effort on the part of the bank to correct any errors

13  that may occur?

14       MR. KIRSCH:  Your Honor, respectfully, I would suggest

12:58  15  that even if it does go that far to suggest that, it suggests

16  that in instances it didn't happen.  That's the problem.  And

17  there's no testimony on this from anybody at HSBC.  Even if bank

18  employees were required to input the information, there's no

19  indication that there is this indicia of reliability with the

12:59  20  information contained in this screen shot.  Because we don't

21  know when it was inputted.  We've had no testimony about these

22  particular screen shots that any witness has ever laid eyes on

23  them.  So they just don't have the indicia of trustworthiness.

24       And for the court to ask that question I think

12:59  25  demonstrates the leap that we would have to take to find that

271

1    the documents have the indicia of trustworthiness to put them in

2    evidence.

3         I mean, you could suggest in every single instance in

4    every single case people are supposed to or record information

5    correctly, but they don't always do it.  And that's why hearsay

6    statements are routinely kept out.  Because that's why 803(6)

7    exists, because there have to be these guarantees of

8    trustworthiness.  And what are they?  They're at, made or by the

9    time with a person with knowledge, and you have these guarantees

10   in indicia of trustworthiness.

11        But here we've demonstrated that these records don't

12   even have that.  Now, we can't point to -- I mean, obviously if

13   we could point to every line and we could say this line is

14   false, that line is false, that line is false, we'd never be

15   here.  But that's not the test.  That's not our burden.  It's

16   the government's burden to prove that they have indicia of

17   reliability.  They've tried to do it through a witness who

18   hasn't seen the documents.  And now we've submitted evidence to

19   the court that suggests that these screen shots aren't always

20   accurate.  And in some instances there were bankers that may

21   have caught the mistake and said that it should be corrected.

22   But that's not the test.  The test is was it input -- was it

23   inputted accurately so that we can rely on it.

24        Your Honor, we don't even know how it was inputted,

25   let alone that it was inputted accurately.  And now we know in

1    some instances it wasn't even inputted accurately.  And the

2    government is -- I mean, I guess this issue is even crystalized

3    by the fact that the government has said this evidence is so

4    important that they can't go to trial without it.

01:01  5           And to allow them to put this in evidence and do what

6    they're going to try to do from this evidence, Your Honor, I

7    don't think it's appropriate under 807, I don't think it's

8    appropriate under 803, and I think our brief points out all the

9    reasons why they have not met the exceptional circumstances test

01:01 10    of the Seventh Circuit, at least in pages 7 through 13.

11           THE COURT:  Can you go back for a moment and give me a

12    pinpoint cite within Idaho vs. Wright that you were looking to?

13           MR. KIRSCH:  Sure, Your Honor.  I was looking at

14    page 823.

01:02 15           THE COURT:  Okay.  Hold on.

16           MR. KIRSCH:  And 822, Your Honor.  And I can tell you

17    what I was looking at if you'd like me to read it.

18           THE COURT:  One second.  I have the page up.

19           MR. KIRSCH:  There's two statements, one -- on 823

01:02 20    there's the word "bootstrapping," which I suggest is what the

21    government's trying to do.  And then on page 822 begins "we are

22    unpersuaded by the state's contention."

23           And then there's also Seventh Circuit law, Huff vs.

24    Wright Motor Corp., which holds the same thing.  And I can give

01:02 25    the court a cite if it wants it.

273

1          THE COURT:  One second, please.

2          (Brief pause.)

3          THE COURT:  What's the other cite?

4          MR. KIRSCH:  Are you talking about in Idaho vs. Wright

5   or the Seventh Circuit?

6          THE COURT:  Seventh Circuit.

7          MR. KIRSCH:  The Seventh Circuit, Your Honor, is

8   609 F 2.d 283 -- I'm sorry, 286 at page 293.  And the relevant

9   quote is:  "The probability that the statement is true as shown

10  by corroborative evidence is not, we think, a consideration

11  relevant to the admissibility under the residual exception to

12  the hearsay rule.  Because the presence or absence of

13  corroborative evidence is irrelevant in the case of a specific

14  exception, it is irrelevant here where the guarantees of

15  trustworthiness must be equivalent to those supporting specific

16  exception."

17          And that's consistent with Judge Easterbrook's opinion

18  which was more recently in the case of United States vs. Dent.

19  And I'd like to provide the cite for that case, too, if I can,

20  Your Honor.

21          THE COURT:  Go ahead.

22          MR. KIRSCH:  984 F 2.d 153-165 -- I'm sorry.  1453,

23  and then the page cite is 1465 through 66.  In that case the

24  Seventh Circuit had found that the court -- the district court

25  correctly rejected the hearsay as untrustworthiness and never

274

1    reached the 807 issue.  But Judge Easterbrook, urging the court

2    to do so, concurred and wrote a concurring opinion that says:

3              "The residual hearsay exception reads more naturally

4    if we understand the introductory clause to mean that evidence

5    of a kind specifically addressed covered by one of the other

6    exceptions must satisfy the conditions laid down for its

7    admission, and that other kinds of evidence not covered, because

8    the drafters could not be exhaustive, are admissible if the

9    evidence is approximately as reliable as evidence that would be

10   admissible under the specific exceptions."

11             So Judge Easterbrook has adopted our position which is

12   consistent with Idaho vs. Wright and consistent with Huff vs.

13   White Motor Corp., which is the position that the government has

14   asked the court to do, which is judge the reliability of the

15   screen shots based on corroborating evidence, is not the test.

16   It's not what -- it's not the decision that should be made.

17             And Your Honor, but we go farther than that because --

18             THE COURT:  Well, let me say that in determining

19   whether or not the screen shots are admissible in this case I

20   wasn't looking at other corroborative evidence except to the

21   extent that there was testimony and other proof concerning the

22   way in which HSBC operates and the way that the information in

23   the screen shots has been utilized by HSBC and its employees,

24   especially in the New York office over the years.

25             It's apparent from what's in the record that the

275

1    accuracy of the screen shots was something that was of concern

2    to HSBC.  And as your brief and the e-mails you point out

3    indicate, there certainly was a desire and effort on the part of

4    HSBC and its employees to correct anything that was erroneous.

01:07  5   And in the instance of the matters you pointed out, they were

6    concerned about the interest rate that was reflected and about

7    the business of correcting the inaccurate entry respecting the

8    interest rate.  But, again, the decision did not rely upon some

9    unrelated testimony or evidence in the record to bootstrap

01:08 10   whether or not the residual hearsay rule could be employed to

11   admit the screen shots 69 and 71.

12          So at this stage the court sees no reason to alter its

13   ruling respecting the screen shots.

14          MR. KIRSCH:  Subject to the redactions, I assume,

01:08 15   Your Honor.

16          THE COURT:  Subject to the redactions which, of

17   course, the government acknowledges is required with respect to

18   inquiry by customers.  By customer.

19          MR. KIRSCH:  And what about account number,

01:08 20   Your Honor?

21          THE COURT:  I think that that should still be

22   included.  I don't see any reason why account numbers should be

23   excluded.  And the government isn't suggesting that an account

24   number should be excluded.  Now, there may be a reference to a

01:09 25   CD in a letter attributed to your client, but that doesn't mean

1    that the screen shot should be excluded on any ground.

2          MR. KIRSCH:  Well, Your Honor, I was asking that

3    because of what the government wrote in its brief that -- they

4    write in their brief that the screen shots establish the

5    defendant had bank accounts in India with HSBC and the defendant

6    was aware of the existence of those accounts.

7          These screen shots don't -- they never -- there's not

8    one piece of evidence that ever suggests that these ever went to

9    the defendant and that he was ever aware from the existence of

10   these screen shots --

11         THE COURT:  Well, that's another matter.  That doesn't

12   relate to whether or not the screen shot as a piece of evidence

13   --

14         MR. KIRSCH:  Right.

15         THE COURT:  -- should be admitted.  What you're

16   arguing is that the government should not be able, at the end of

17   the day, to argue as you've indicated.  That's a totally

18   different matter.

19         Now, there may be nothing else in the record to

20   support an argument like that and we'll certainly have to see,

21   but I'm not going to predict at this moment in time that the

22   government is unable to tie everything together.

23         Does the government wish to be heard?  I see a

24   quizzical look.

25         MR. SULLIVAN:  Your Honor, there's one other issue

1   that needs to be addressed after all this is settled.  So if you

2   can give the signal when it's over with I'll raise that issue.

3             THE COURT:  Do you want to say anything else

4   concerning the screen shot?  And let me just add, ordinarily

01:10   5   during trial if a lawyer handles an issue that lawyer will be

6   the only one for that side handling an issue.  But now you have

7   latitude.

8             MR. SULLIVAN:  Your Honor, I don't want to say

9   anything about the screen shots.  I was going to try -- I was

01:11   10   going to make a comment about what to argue but that's so

11   premature it would be a waste of time right now.

12             THE COURT:  All right.

13             MR. SULLIVAN:  What to argue at trial, I mean.

14             THE COURT:  All right.  Are we done with any argument

01:11   15   from the government concerning screen shots?

16             MS. SISKIND:  Yes, Your Honor.

17             THE COURT:  All right.  That matter has been resolved

18   for the moment.

19             MR. SULLIVAN:  Your Honor, may I be heard?

01:11   20               THE COURT:  Absolutely.

21             MR. SULLIVAN:  Then the issue is what to do with count

22   one.  And I am happy to report that I have authorization to move

23   to dismiss count one, but I don't want to do it right now today.

24   But I will represent to the court and to the parties -- if

01:11   25   the -- if Dr. Ahuja agrees, because under the rule if we move to

1   dismiss a count the defendant I think has to agree -- or no, the

2   court has to --

3           THE COURT:  Grant you leave to dismiss.

4           MR. SULLIVAN:  Right.  And assuming that everyone

5   agrees that we want to do this, I would like to do it right

6   before we pick the jury.  And we don't have to -- it should be

7   pro forma, but I just wanted to make that --

8           THE COURT:  All right.

9           MR. WEBB:  Your Honor, could I just raise one issue?

10  And I saw you look at the hour.

11          THE COURT:  Yes.  I certainly want to give you time

12  for lunch, and we can break and resume if it's necessary to do

13  so.  If there is nothing else that we need to resolve or

14  something we can attend to within a couple moments then we'll do

15  that instead.

16          MR. WEBB:  I only have one issue which I think --

17          THE COURT:  Please stand close to a microphone.

18          MR. WEBB:  I'm sorry.  I apologize.

19          We really haven't -- I have not had the pleasure of

20  picking a jury in Your Honor's court, can we walk through

21  briefly the process that you follow with voir dire?

22          THE COURT:  Let's do that off the record.

23          MR. WEBB:  Yes, we'll do that off the record.  And the

24  answer is yes.  I have nothing else.

25          THE COURT:  All right.  For the record we have

279

1    concluded our discussion of issues related to the evidence in

2    the case, and at this point the court will review with parties

3    some of the logistical matters concerning the trial.  If there

4    are issues that arise during the course of that off-the-record

01:13    5    discussion we will go back on the record and try to resolve

6    those issues.

7              We are in recess.

8              (Trial adjourned for an off-the-record discussion in

9    the jury room at 1:13 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT

2   EASTERN DISTRICT OF WISCONSIN

3

4               I, JOHN T. SCHINDHELM, RMR, CRR, Official Court

5   Reporter for the United States District Court, Eastern District

6   of Wisconsin, do hereby certify that I reported the foregoing

7   proceedings, and that the same is true and correct in accordance

8   with my original machine shorthand notes taken at said time and

9   place.

10  Dated this 13th day of August, 2012

11  Milwaukee, Wisconsin.

12

13  _____
          Official Court Reporter
14        United States District Court

15

16

17

18

19

20

21

22

23

24

25